IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Brandy Tate, ) | |
| ) | Civil Action No. 7:10-2335 |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Bank of America, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

**BACKGROUND**

On March 2, 2010, the plaintiff, a former Bank of America employee, filed suit in Alameda County, California Superior Court against Bank of America Corporation, Kenneth Lewis, and Larry Di Rita.  On April 8, 2010, the case was removed to the United States District Court for the Northern District of California, San Francisco division and, upon motion, transferred to this court on July 22, 2010.  The plaintiff thereafter filed a complaint in this court on September 7, 2010, again naming as defendants Bank of America Corporation, Kenneth Lewis, and Larry Di Rita.  The plaintiff also included an additional defendant, Ronald Belle, and alleged 17 causes of action:  misrepresentation (Count 1); defamation (Counts 2-4); invasion of privacy (Count 5); discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Americans with Disabilities Act ("ADA")(Counts 9-10); wrongful discipline in violation of the public policy set forth in Title VII (Count 11); constructive wrongful discharge (Count 13); retaliation (Count 14); breach

of an implied-in-fact contract (Count 15); breach of the covenant of good faith and fair dealing (Count 16); and multiple claims under California law (Counts 6, 7, 8, 11, 12, 14 and 17).

## FACTS PRESENTED

In January of 2006, the plaintiff began working at Bank of America as a Banking Center Manager at the Bank's Gaffney Mall Banking Center in Gaffney, South Carolina (comp. ¶ 42). On September 15, 2009, she observed American flags displayed on the Bank's property (*id.* at ¶17). The plaintiff removed the flags from the Bank's property (*id.* at ¶¶17, 20, 21). The plaintiff claims the display of the flags violated two specific written Bank of America polices: the "Banking Center Appearance" policy and the "Flag Standards" policy (*id.* at ¶¶ 17-19). She did not know who placed the flags on Bank property nor did she know the reason (*id.* at ¶ 20).

Later that day, the plaintiff saw Brenda Earls – a local citizen – placing more American flags on Banking Center property (*id.* at ¶¶ 21-23). The plaintiff approached Ms. Earls and told her that she could not place the flags on Bank property without her supervisor's approval (*id.*). According to the plaintiff, after Ms. Earls left, Ms. Earls called the Banking Center and asked for "'the young black girl's name who gave me my flags back' or words to this effect" (*id.* at ¶ 22). The plaintiff contends that an unidentified Bank employee gave her name to Ms. Earls (*id.*).

After Ms. Earls left the Banking Center, the plaintiff contacted a member of the Bank's "marketing team," Susan Clark, who informed the plaintiff that "until they knew why the then unidentified woman wanted to place flags on bank property, they could not allow the flags to be placed on bank property until the purpose was known and permission granted" (*id.* at ¶ 23).

Later that same day, "a bank supervisor," Reid Steedly, informed the plaintiff that Ms. Earls placed the flags on the Bank's property because it was on the route of a funeral procession for a local resident who had recently been killed in Afghanistan and that

Ms. Earls could place her flags on Bank property (*id.* at ¶ 24). The plaintiff thereafter personally purchased flags and placed them on Bank property. The plaintiff and two other employees stood outside waving flags in honor of the Marine as the procession passed the Bank on the following day (*id.* at ¶ 26).

FOX News later interviewed Ms. Earls about the plaintiff's removal of the American flags (*id.* at ¶ 28). Ms. Earls informed FOX News that the plaintiff told her that the Bank's policy "prohibited the flags from being on the property" and that some of the Bank's customers may find the American flag offensive (*id.*). The FOX News broadcaster played Ms. Earls' interview for Bank of America's spokesperson, Larry Di Rita, and asked him to comment on Ms. Earls' version of events (*id.*). In response, Di Rita stated that the matter was a "mistake." Di Rita also stated that the Bank "'encourage[s] branches to fly the American flag and we have over 6000 branches around [the] country, where many of them do'" (*id.*). Di Rita did not identify the plaintiff by name (*id.* at ¶ 28). The FOX News broadcaster, however, did identify the plaintiff by name and stated that she "showed no respect for our military or this fallen Marine" (*id.*). The plaintiff contends that after the interview she received derogatory and threatening emails, letters, and phone calls from the public (*id.* at ¶ 29). The plaintiff also contends that a Bank of America employee sent her an email commenting on her actions (*id.* at ¶ 32).

On September 21, 2009, the Bank transferred the plaintiff to the Pinewood Banking Center in Spartanburg, South Carolina. The plaintiff contends that Marketing Manager Michael Peavy and defendant Ronald Belle, who was her supervisor at the time, told her not to wear a name badge and told other employees only to refer to her by first name (*id.* at ¶¶ 42-44). In October 2009, the plaintiff took a medical leave of absence (*id.* at ¶ 33). The plaintiff claims that the defendants harassed her and falsely stated that she did not provide a doctor's certification of disability. Bank of America terminated her employment on April 7, 2010 (*id.* and ex. A thereto).

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted. Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (*quoting Twombly*, 550 U.S. at 555, 570). Accordingly, a complaint does not require detailed facts; however, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Furthermore, a complaint is insufficient if it provides bare assertions lacking additional factual support. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (*citing Twombly*, 550 U.S. at 555). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party. *See De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (*citing Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

The defendants moved for dismissal of the plaintiff's causes of action for failure to state a claim. In her response, the plaintiff admits that South Carolina law governs this action and that defendants Kenneth Lewis and Ronald Belle should be dismissed with prejudice. The plaintiff further agrees that all counts based on California law (Counts 7, 8, 12, and 17) should be dismissed. The plaintiff also agrees that Counts 1, 11, and 13 should be dismissed with prejudice (pl. resp. m. to dismiss at 2). The plaintiff, however, contends that she can state claims for defamation (Counts 2-4); invasion of privacy (Count 5); intentional infliction of emotional distress (Count 6); discrimination in violation of Title VII and the ADA (Counts 9-10); retaliation (Count 14); breach of an implied-in-fact contract (Count

4

15); and breach of the covenant of good faith and fair dealing (Count 16).  The plaintiff argues that should additional facts be required, she should be allowed to amend her complaint "to more closely tailor the complaint to South Carolina Law" (pl. resp. m. to dismiss at 5).  The defendants oppose such request.

***Defamation***

The defendants argue the plaintiff failed to sufficiently plead her defamation p*er se*, slander, and libel claims based upon defendant Di Rita's interview with FOX News (Counts 2-4).  To state a defamation claim under South Carolina law, the plaintiff must allege:  (1)  a false and defamatory statement was made about her; (2)  the unprivileged publication was made to a third party; (3)  the publisher was at fault; and (4)  either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *See Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 499, 506 (S.C. 1998); *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002).  A statement is considered actionable *per se* when it is a false and defamatory statement and alludes to: (1)  commission of a crime of moral turpitude; (2)  contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession. *See Holtzscheiter*, 567 S.E.2d at 501-02.  If a defamation is not actionable *per se*, the plaintiff must "plead and prove common law actual malice and special damages." *Id.* at 501-502.  Special damages are "tangible losses or injury to the plaintiff's property, business, occupation or profession, capable of being assessed monetarily, which result from injury to the plaintiff's reputation." *Id.* at 502 n.4.

The defendants argue that defendant Di Rita's alleged statement that the plaintiff made a "mistake" cannot be construed as a statement about her unfitness for her profession. *See e.g., Long v. Vertical Technologies, Inc.*, 439 S.E.2d 797, 801 (N.C. Ct. App. 1994)(holding that a statement by a president of a company that the plaintiffs did not handle business correctly and engaged in "shady" transactions did not injure the plaintiffs in their trade, business or profession and, thus, did not constitute slander *per se*).  This court

agrees. The plaintiff argues that the email she received from another employee[1] of the Bank illustrates "the impact DiRita's false statements had on [her] professionally" (pl. resp. m. to dismiss at 6). However, in evaluating whether a statement is actionable *per se*, the actual words spoken and/or written, rather than subsequent communication reacting to the words, must be examined to determine whether in their plain meaning the words alludes to unfitness in one's profession. Here, as argued by the defendants, the alleged statement cannot be construed as a statement about the plaintiff's unfitness for her profession.

The defendants further argue that the plaintiff failed to plead special damages and thus cannot state a claim for ordinary libel and slander. The plaintiff alleges that the false statements about her caused her to receive hate mail and death threats such that she had to take medical disability leave (comp. at ¶ 36). She argues that since the disability leave affected her pay and benefits, she suffered special damages. She further argues that she suffered special damages by having to seek professional medical treatment and by being transferred to another Bank branch that required her to commute an additional 50 miles a day, both of which resulted in a tangible monetary loss to her (pl. resp. m.s.j. at 5-6). The defendants argue that the plaintiff's purported damages "were not a 'manifestation' of injury to her reputation, but rather the result of the alleged threatening communications she received" (def. reply at 5). However, viewing the allegations in a light most favorable to the plaintiff, it appears to this court that the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face" for ordinary libel and slander. *See Robinson*, 551 F.3d at 222.

Based upon the foregoing, this court recommends that the motion to dismiss be granted as to the claim for defamation *per se* (Count 2) and denied as to the claims for libel and slander (Counts 3 and 4).

---

[1] In that email to the plaintiff, a financial advisor employed by the Bank in Georgia described the plaintiff's actions as "over-zealous" and "bone-headed" (comp. at ¶ 32).

### *Invasion of Privacy*

The defendants argue that the plaintiff's invasion of privacy claim (Count 5) fails to state a claim. Specifically, South Carolina recognizes three causes of action for invasion of privacy: (1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs. *See Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 759 (S.C. 2009) (*citing Swinton Creek Nursery v. Edisto Farm Credit*, 514 S.E.2d 126 (S.C. 1999)). Here, the first potential claim is inapplicable because the plaintiff does not allege that the defendants attempted to profit from her "name, likeness or identity." *See Snakenberg v. Hartford Casualty Ins. Co.*, 383 S.E.2d 2, 5-6 (S.C. Ct. App. 1989)(stating that the wrongful appropriation of personality is "the intentional, unconsented use of the plaintiff's name, likeness, or identity by the defendant for his own benefit," and an essential element of the claim for intrusion into private affairs is that the matter be "private"). The second and third potential claims also are inapplicable because, to state such a claim, the defendants "must have intentionally committed 'public disclosure of private facts about the plaintiff – facts in which there is no legitimate public interest,'" *see Doe 2 v. Associated Press*, 331 F.3d 417, 421 (4th Cir. 2003), or intruded on her "private affairs," *Snakenberg*, 383 S.E.2d at 5-6, and, here, the plaintiff fails to identify any "private" affair upon which the Bank allegedly intruded. The plaintiff did not address her invasion of privacy claim in her opposition to the motion to dismiss. Accordingly, it appears she has abandoned this claim. Based upon the foregoing, the motion to dismiss should be granted with regard to Count 5.

### *Intentional Infliction of Emotional Distress*

According to the plaintiff, she can state an intentional infliction of emotional distress claim because Di Rita "lied" about her on FOX News (pl. resp. m. to dismiss at 6-7). First, the plaintiff cannot state a claim for intentional infliction of emotional distress because it is barred by the South Carolina's Workers' Compensation Act. *See McClain v. Pactiv Corp.*, 602 S.E.2d 87, 89 (S.C. Ct. App. 2004)(dismissing intentional infliction of emotional

7

distress claim on grounds it is barred by the exclusivity provision of the Act). The plaintiff cites no authority for her argument that her claim survives the workers' compensation bar because "being subjected to defamation, liable [sic], and slander is not part of any compensation bargain" (pl. resp. m. to dismiss at 7). Furthermore, taking her allegations in the light most favorable to the plaintiff, even if Di Rita's statement on FOX News that the plaintiff made a "mistake" was false, this alleged conduct is not sufficiently extreme or outrageous to rise to the level of an actionable intentional infliction of emotional distress claim. *See, e.g., Deel v. Home Depot USA, Inc.*, C.A. No. 7:09-02817-GRA, 2010 WL 2179576, at *5 (D.S.C. May 14, 2010)(recommending dismissal of emotional distress claim on a 12(b)(6) motion where the plaintiff's claim was based on the allegation that the defendants made false statements about him), *adopted by* 2010 WL 2196272 (S.C. May 26, 2010); *Folkens v. Hunt*, 348 S.E.2d 839, 845 (S.C. Ct. App. 1986) (holding that falsely accusing someone of criminal conduct does not amount to the tort of outrage). Based upon the foregoing, Count 6 should be dismissed.

***Title VII***

In Count 9, the plaintiff contends that the defendant violated Title VII by: (1) discriminating against her because of her "medical condition, mental or physical disability, race and gender;" and (2) by subjecting her to a hostile work environment (comp. at ¶ 96). The plaintiff specifically alleges that she was treated differently than her "European-American" supervisor (*id.* at ¶ 37).

First, Title VII does not apply to medical conditions or mental or physical disabilities. *See* 42 U.S.C. ¶ 2000e-2. Accordingly, to the extent the plaintiff makes such a claim under Title VII, the claim should be dismissed.

Second, the defendants argue that the plaintiff's supervisor is an improper comparator because "subordinates are not similarly situated to their supervisors for the purpose of establishing alleged discrimination" (def. m.s.j. at 20) (*citing Oguezuonu v. Genesis Health Ventures, Inc.,* 415 F.Supp.2d 577 (D.Md. 2005)). However, as argued by

8

the plaintiff, the case cited by the defendants differs in material respects from the facts presented here. The *Oguezuonu* case dealt with a manager who was demoted because of a failure to supervise her employees. 415 F.Supp.2d at 584-85. The court found that her subordinates were not similarly-situated to her as they were not expected to supervise. *Id.* Here, the plaintiff alleges that her actions and those of her supervisors were the same, yet she was treated less favorably. Based upon the foregoing, this court recommends that the motion to dismiss be denied as to the claim for disparate treatment under Title VII.

To the extent the plaintiff claims she was subjected to a hostile work environment in violation of Title VII, such claim fails. The defendant argues that the plaintiff has failed to identify the protected class on which she relies, she has failed to describe any conduct that was directed at her because of her membership in a protected class, and she has failed to allege that the Bank had any notice of any alleged wrongful conduct. Furthermore, the defendants argue the plaintiff has failed to describe any conduct that is sufficiently severe or pervasive as to alter the conditions of her employment. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241-42 (4th Cir. 2000). This court agrees. The plaintiff did not respond to the defendants' argument that she cannot state such a claim under Title VII and thus appears to have abandoned the claim. Based upon the foregoing, the plaintiff's hostile work environment claim under Title VII should be dismissed.

### *ADA*

The plaintiff contends that the defendant Bank violated the ADA by "terminating her employment while she was on certified medical disability leave and for failing to engage in a timely, good faith, interactive process . . . to determine effective reasonable accommodations" (comp. at ¶105 (Count 10)). To state a wrongful discharge claim pursuant to the ADA, the plaintiff must establish that: (1) she was disabled within the meaning of the ADA; (2) she was discharged; (3) at the time of discharge, she was performing the job at a level that met her employer's legitimate expectations; and (4) the discharge occurred under circumstances that raise a reasonable inference of unlawful

discrimination. *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n. 9 (4th Cir. 2004) (*citing Haulbrook v. Nichelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

The defendants argue that the plaintiff failed to identify her alleged condition, failed to allege that she could perform the essential functions of her position with or without a reasonable accommodation, and failed to state any facts suggesting that her discharge occurred under circumstances giving rise to a reasonable inference of disability discrimination. However, the plaintiff does allege that at the time she was discharged from employment she was on "certified medical disability leave" and that the defendant Bank failed

> to engage in timely, good faith interactive process with Plaintiff to determine effective reasonable accommodations, if any, in response to her request from her and her treating physician for reasonable accommodation of her disability, which was a known mental disability and medical condition.

(Comp. at ¶ 105).

Viewing the allegations in a light most favorable to the plaintiff, it appears to this court that the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face" for violation of the ADA. *See Robinson*, 551 F.3d at 222. Accordingly, the motion to dismiss should be denied as to Count 10.

***Retaliation***

The plaintiff also alleges the defendants retaliated against her "because she protested discriminatory conduct by filing a civil lawsuit and filing claims of discrimination" (comp. at ¶¶124-26). While the plaintiff does not identify the basis for her retaliation claim, she relies elsewhere on Title VII and the ADA. As argued by the defendants, there is no individual liability under Title VII or the ADA, and therefore the claims against the individual defendants should be dismissed. *See Lissau v. Southern Food Services, Inc.*, 159 F.3d 177,

180-81 (4th Cir. 1989); *Jones v. Sternheimer*, No. 09-2242, 2010 WL 2711305, at *2 (4th Cir. July 6, 2010).

Furthermore, to state a retaliation claim, the plaintiff must allege that: (1) she engaged in protected activity, (2) an adverse employment action was taken against her, and (3) a causal connection exists between the protected activity and the adverse action. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). The plaintiff alleges that the protected activity she engaged in was filing a civil lawsuit and an EEOC charge (comp. at ¶¶ 125). "Protected activity" constitutes "[o]ppos[ing] any practice" made "unlawful" by Title VII or the ADA or "participating in any manner in an investigation, proceeding, or hearing" under Title VII or the ADA. *See* 42 U.S.C. §2000e-3(a); 42 U.S.C. §12203(a).

Here, the plaintiff filed her complaint in California on March 2, 2010. However, that complaint and the amended complaint filed on March 8, 2010, did not include any discrimination claims. Thus, the initial lawsuit did not constitute protected activity as defined by Title VII and the ADA. Further, the EEOC charge was filed on April 12, 2010, which was several days after her discharge from employment on April 7, 2010. Thus, viewing the evidence in a light most favorable to the plaintiff, she cannot show a causal connection between protected activity and her dismissal from employment. In her response in opposition to the motion to dismiss, the plaintiff does not address the defendants' argument and states only that she has "pled sufficient facts," but if this court feels the facts are insufficient, she "can allege additional facts regarding her retaliation claim" (pl. resp. m. to dismiss at 9-10). The plaintiff does not identify what these facts are or how they would satisfy a *prima facie* case of retaliation. Based upon the foregoing, Count 14 should be dismissed.

**Breach of an Implied-in-Fact Contract**

For an oral implied-in-fact contract to alter an employee's at-will status, an offer must be definite. *See Prescott v. Farmers Tel. Coop., Inc.*, 516 S.E.2d 923, 926 (S.C.

1999). The employee must show: (1) a specific offer; (2) a communication of the offer to her; and (3) performance of job duties in reliance on the offer. *Id.*.

According to the plaintiff, three alleged promises constituted an implied-in-fact employment agreement with the Bank (comp. at ¶¶128(a)-(c)). As argued by the defendants, the first alleged promise – that the "[p]laintiff would be able to continue her employment with Defendant Bank of America indefinitely so long as plaintiff carried out her duties in a proper and competent manner," (*id.* at ¶128(a)) – is not definite enough to create an oral contract of employment under South Carolina law. *See Davis v. Orangeburg-Calhoun Law Enforcement Comm.*, 542 S.E.2d 755, 760 (S.C. Ct. App. 2001). In *Davis*, the plaintiff alleged he was told that he would "only be terminated for cause." The South Carolina Court of Appeals rejected this statement as not definite enough to make a contract. *Id.* Therefore, as was the case in *Davis*, the plaintiff's allegation of indefinite employment so long as she "carried out her duties in a proper and competent manner" is not sufficient to state a claim. The second alleged oral statement – that "[p]laintiff would not be denied fair treatment or be compelled to resign for other than good cause," (comp. at ¶128(b)) – also fails to establish an oral contract. *See Grant v. Mount Vernon Mills, Inc.*, 634 S.E.2d 15, 21 (S.C. Ct. App. 2006) (holding that the employer's policy statement to be "fair and just" did not create an enforceable contract). The third statement – that "defendant Bank of America would not allow plaintiff to be harassed or retaliated against on account of medical condition, mental or physical disability," (comp. at ¶128(c)) – is a general policy statement, and South Carolina courts have held that such statements, particularly when they concern discrimination laws, cannot alter an employee's at-will status. *See King v. Marriott Int'l, Inc.*, 520 F. Supp. 2d 748, 756 (D.S.C. 2007) (holding that the employer's promise that "'there will be no discrimination or recrimination' against an employee who asserts a Complaint against the Company does not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated").

In response to the motion to dismiss, the plaintiff argues only that she can plead additional facts to establish the elements of her contract causes of action (pl. resp.

m. to dismiss at 10). However, again, she does not identify what these facts are or how they would satisfy a *prima facie* case. *See e.g., In Re NAHC, Inc. Securities Litigation*, 306 F.3d 1314, 1332 (3rd Cir. 2002) (finding district court did not abuse its discretion in denying the plaintiffs leave to amend their deficient complaint where they did not specify what additional facts, if any, they would plead if given another opportunity to amend complaint). Based upon the foregoing, the motion to dismiss Count 15 should be granted.

### *Breach of Covenant of Good Faith and Fair Dealing*

To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the existence of a contract. *See Rotec Services, Inc. v. Encompass Services, Inc.*, 597 S.E.2d 881, 882-84 (S.C. Ct. App. 2004). Here, the plaintiff fails to allege the existence of any written contract with Bank of America, and, as discussed above, none of the allegations in the complaint are sufficient to create an oral contract of employment. Therefore, Count 16 should also should be dismissed.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the motion to dismiss (doc. 8) be denied as to Counts 3 (Libel), 4 (Slander), 9 (Title VII - disparate impact claim only), and 10 (ADA). This court further recommends that the motion to dismiss be granted as to all other causes of action and that defendants Kenneth Lewis and Ronald Belle be dismissed with prejudice.

IT IS SO RECOMMENDED.

June 15, 2011                                              s/Kevin F. McDonald
Greenville, South Carolina                        United States Magistrate Judge